**CARPETS BY the CARLOAD, INC.,**
a Wisconsin corporation, Plaintiff,

v.

**Robert W. WARREN, Attorney General**
of the State of Wisconsin, et al.,
Defendants.

**No. 73–C–480.**

United States District Court,
E. D. Wisconsin.

Oct. 3, 1973.

Samson, Friebert, Sutton & Finerty by Robert E. Sutton, Milwaukee, Wis., for plaintiff.

Foley & Lardner by James P. Brody, Timothy C. Frautschi and Thomas L. Shriner, Jr., Milwaukee, Wis., for The Journal.

Boardman, Suhr, Curry & Field by Bradway A. Liddle, Jr. and Claude J. Covelli, Madison, Wis., for Madison Newspapers.

Robert W. Warren, Atty. Gen. of Wis. by Robert D. Repasky, Madison, Wis.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

The plaintiff, Carpets By The Carload, Inc. (Carpets) is a business corpo-ration engaged in the sale and installation of carpeting. It challenges the constitutionality of the Wisconsin statutory scheme which proscribes "untrue, deceptive and misleading" advertising, claiming that it is facially void for vagueness. See § 100.18, Wis.Stats. (1971).

Carpets requests that a three-judge court convene pursuant to 28 U.S.C. § 2281 in order to consider this issue in the context of a declaratory judgment proceeding. The plaintiff also seeks preliminary injunctive relief from the alleged "prior restraints" visited upon its recent commercial advertising efforts as a consequence of what the complaint describes as a "conspiracy", involving the defendant state attorney general and newspapers, to run Carpets out of business "under color of (the challenged) state law". This was said to be in violation of 42 U.S.C. §§ 1983 and 1985.

On September 5, 1973, I denied Carpets' motion for a temporary restraining order. In the meantime, the three-judge court and preliminary injunction issues have been fully briefed, and the defendants have moved to dismiss. I conclude that the plaintiff's request for a three-judge court should be denied, that its motion for a preliminary injunction should be denied, and that the instant complaint as well as this action should be dismissed.

On June 1, 1973, the attorney general instituted proceedings against Carpets in the state court, pursuant to the challenged statute. That statute is part of a statutory scheme which provides for administrative rule-making, attempts at gaining compliance, and ultimately, the submission of the matter to a state court which is to determine whether the advertising is fraudulent. See § 100.01 et seq., Wis.Stats. (1971).

Several weeks later, the plaintiff was notified by the defendant newspapers that no further credit would be extended to it for the purpose of purchasing advertising space. A letter from the defendant Madison Newspapers, Inc. to Carpets of date July 12, 1973, is representative. It appears to be in the gener-

al nature of a dunning letter, indicating money owed and refusing further credit; it also refers to Carpets' trouble with the attorney general. Although that letter does not clearly indicate whether that newspaper would accept prepaid advertising, an August 28, 1973, follow-up letter from the attorney for the defendant Madison Newspapers, Inc. to the attorney for Carpets indicated that there were "no objections to running [Carpets'] advertising." Indeed, Carpets makes no allegation that any advertising subsequently proffered to any of the defendant newspapers on a prepaid basis has been refused printing.

Uncontroverted affidavits submitted by the defendant newspapers indicate that Carpets' accounts were several months delinquent at the time its credit was discontinued. There is no allegation that the action in the state court involved the newspapers, or that the attorney general ever acted or even threatened to act against the newspapers. Nevertheless, the plaintiff contends that, but for the attorney general's having allegedly "advised" the newspapers of the pending civil action, its credit would not have been discontinued, thus effectively working a subtle "prior restraint" upon its alleged first amendment rights.

■ In Idlewild Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 1296, 8 L.Ed.2d 794 (1962), the United States Supreme Court indicated, among other things, that:

> "When an application for a statutory three-judge court is addressed to a district court, the court's inquiry is appropriately limited to determining whether the constitutional question raised is substantial, . . . ."

"Constitutional insubstantiality" for this purpose has been equated with such concepts as "essentially fictitious" and "wholly insubstantial", Bailey v. Patterson, 369 U.S. 31, 33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); "obviously frivolous", Hannis Distilling Co. v. Baltimore, 216 U.S. 285, 288, 30 S.Ct. 326, 54 L.Ed. 482 (1910); and "obviously without merit", Ex parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 78 L.Ed. 152 (1933). With regard to this issue, Goosby v. Osser, 409 U.S. 512, 518, 93 S.Ct. 854, 859, 35 L.Ed.2d 36 (1973) cautions that

> " . . . claims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial for the purposes of 28 U.S.C. § 2281."

Mindful of the aforementioned admonitions, I am nevertheless persuaded that in the context of this case, the instant claim of "facial vagueness" must fail because of "constitutional insubstantiality". It follows that a three-judge court should not be convened to consider it.

■ The concept of facial vagueness, when utilized to challenge a statute, generally relates either to a concept of notice or to a belief that vague statutes may deter others in their exercise of first amendment protected activities. Such an argument assumes both an area of protected first amendment activity and language so imprecise that persons will not reasonably realize what action or speech is proscribed. Neither element is present here.

■ The plaintiff attacks the statutory words "untrue, deceptive or misleading [advertisements or representations]" as being so imprecise as to be constitutionally vague. In Grayned v. Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), the Supreme Court indicated that, for constitutional purposes, words need not be mathematically precise. Mourning v. Family Publications Service, Inc., 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973), also indicates that where a regulatory statute is non-criminal, greater latitude is permitted in this regard. The terms "untruthful", "deceptive", and "misleading" in reference to advertisements

are reasonably well defined terms in commercial law and regulation. See Donaldson v. Read Magazine, 333 U.S. 178, 68 S.Ct. 591, 92 L.Ed. 628 (1947). The commercial activities of the plaintiff are within the power of the state to regulate. The statutory scheme set forth in § 101.01 et seq. Wis.Stats. (1971), including the state agricultural department rules promulgated thereunder, is similar to the statutory scheme recently approved by the Supreme Court in United States Civil Service Commission v. National Association of Letter Carriers, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973). The Wisconsin statutory scheme differs to the extent that it provides a judicial forum and civil remedies. The fact that the statute provides for application to a court prior to the imposition of formal sanctions, in my opinion, removes any question of prior restraint. Therefore, with regard to the "imprecision" or "notice" perspective from which this "facial vagueness" attack must be considered, I conclude that the statutory terms and the whole statutory scheme are reasonably geared toward notice and workable precision.

In its request for preliminary injunctive relief, the plaintiff suggests, however, that the very initiation of the proceedings before a judicial body—coupled with the state's alleged notification of the newspapers—constituted a subtle form of "prior restraint". It is claimed that there was a "chilling" of its first amendment rights when its previous satisfactory credit arrangements with the newspapers were cancelled.

The plaintiff's theory fails on the facts and on the law. The uncontroverted factual affidavits submitted by the defendant newspapers indicate that independent business judgment alone dictated their credit treatment of Carpets, and that, under the circumstances, the only "prior restraint" on Carpets is that it pay its substantial, long overdue advertising debts as required by its contracts with them.

With regard to the law in this area, there is some doubt that a business corporation such as Carpets may assert its own right to expression, if any, against state interference. See Aguayo v. Richardson, 473 F.2d 1090, 1099–1100 (2d Cir. 1973); Joint Anti-Fascist Refugee Committee v. Clark, 85 U.S.App.D. C. 255, 177 F.2d 79, 83 (1949), reversed on other grounds, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951). In any event, it is clear that commercial advertising is not protected by the freedom of speech and press provisions of the first amendment. Pittsburgh Press Co. v. Human Relations Commission, 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973); Valentine v. Chrestensen, 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942). Moreover, the court of appeals for this circuit has ruled that a newspaper is not required to accept and publish advertising, even if it is proper and paid for; the advertiser has no first amendment right to access to a newspaper. Chicago Joint Board, Amalgamated Clothing Workers of America v. Chicago Tribune Co., 435 F.2d 470, 478 (7th Cir. 1970), cert. denied, 402 U.S. 973, 91 S.Ct. 1662, 29 L. Ed.2d 138 (1971); Cf. Columbia Broadcasting System, Inc. v. Democratic National Committee, 412 U.S. 94, 93 S.Ct. 2080, 36 L.Ed.2d 772 (1973); and Resident Participation of Denver, Inc. v. Love, 322 F.Supp. 1100 (D.Colo.1971). It follows that an advertiser does not have a constitutional right to access to a newspaper. It is much easier to observe that there exists no constitutional right to advertise on perpetual credit.

The refusal to accept advertising is not actionable under 42 U.S.C. § 1983 as "state action", or under 42 U.S.C. § 1985 as a conspiracy. See Associates & Aldrich Company v. Times Mirror Company, 440 F.2d 133 (9th Cir. 1971); America's Best Cinema Corp. v. Fort Wayne Newspapers, Inc., 347 F.Supp. 328, 334–335 (N.D.Ind.1972); Cook v. Advertiser Company, 323 F.Supp. 1212, 1214 (M.D.Ala.1971); and Resident

Participation of Denver, Inc. v. Love, 322 F.Supp. 1100 (D.Colo.1971).

■ Carpets' contention that the alleged involvement of the state attorney general in the operation of the newspapers somehow transformed the refusal of the newspapers to furnish additional credit into "state action" for purposes of 42 U.S.C. § 1983 is without merit. In Lucas v. Wisconsin Electric Power Company, 466 F.2d 638 (7th Cir. 1972), the court held that the "under color of law" provision encompasses only such private conduct that is supported by significant state involvement.

■ There is no allegation that the action in the state court involved the newspapers, or that the attorney general acted or threatened to act against the newspapers. Carpets alleges only that the attorney general "advised" the newspapers of the pending civil suit. I conclude that the attorney general's notification of a matter of public record and interest, absent more, does not constitute a denial of a constitutional right, let alone "state action" or a "conspiracy" for purposes of 42 U.S.C. §§ 1983 and 1985. Cf. Nolan v. Fitzpatrick, 451 F.2d 545 (1st Cir. 1971).

■ The apparent "constitutional insubstantiality" of the plaintiff's challenge to the state statute in question dictates that the plaintiff's request for the convention of a three-judge court be denied. Furthermore, the absence of actionable "state action" or "conspiracy" "under color of state law" as well as the absence of law or facts indicating the loss of a protected right indicate that the plaintiff's motion for preliminary injunctive relief is without merit. Since the complaint lacks a basis in law and in fact, it should be dismissed. It appearing that the deficiencies therein cannot be cured by an amendment thereto or by a substituted complaint, the instant action must also be dismissed, together with the defendant Journal Company's counterclaim for contractual damages.