WILSON, and wife, Plaintiffs-Appellants, v. CONTINENTAL INSURANCE COMPANIES, and others, Defendants-Respondents.

Supreme Court

No. 76–377. *Argued January 8, 1979.—
Decided January 30, 1979.*
(Also reported in 274 N.W.2d 679.)

312

For the appellant there was a brief by *Robert W. Mudge* and *Forester, Carroll & Rupke,* and oral argument by *Mr. Mudge,* all of Brookfield.

For the respondents Continental Insurance Companies and University of Marquette there was a brief by *Kluwin, Dunphy, Hankin & McNulty,* and oral argument by *Eric Van Vugt,* all of Milwaukee.

COFFEY, J.   On September 30, 1976 the plaintiffs-appellants, Larry B. Wilson and Sandra A. Wilson, his wife, commenced a negligence action against Marquette University, Continental Insurance Company, the school's insurer, and Silva Mind Control International, Inc. (hereinafter Silva.)   The appellants amended their original complaint on October 27, 1976.   On November 29, 1976 the circuit court for Milwaukee County, after a hearing on a motion to dismiss, issued an order and judgment the following day dismissing the Wilsons'

complaint for failure to state a claim upon which relief can be granted. The defendant Silva was not dismissed from the action by the order and judgment and is not a party to this appeal.

The appellants' complaint alleges that Marquette University Law School was negligent in offering to the plaintiff and other students a course in "mind control." The course was conducted by the co-defendant, Silva. The pleadings sets forth that plaintiff, Larry B. Wilson, is an adult, black male who enrolled in the Law School in August, 1974. In addition to the regular law school curriculum, Mr. Wilson and other minority students were encouraged to participate in tutoring and additional courses such as the special Silva mind control course. Allegedly, these courses or programs were offered because certain minority students entered law school under lower admission standards than white students.

The appellants' complaint alleges that sometime during the first week of October, 1974 the Law School contracted with Silva to hold a mind control program for these minority law school students. Prior to arranging the course, it is alleged that the Law School asked the University Counseling Center to make a determination as to whether they would recommend the mind control program to these minority students. The counseling center rendered an "adverse recommendation." Despite the guidance counseling evaluation, the Law School allowed Silva to hold the mind control sessions and arranged that Silva's tuition fee be reduced from $190 to $10. Mr. Wilson and approximately 10 others attended the Silva course consisting of four 12-hour sessions on the 17th, 18th, 19th and 20th of October, 1974.

The complaint recites that the Law School impliedly gives grading consideration to those minority students who participate in the extra tutoring and special courses and the reverse being true if they refuse to co-operate

and fail to attend the additional instruction offered. Mr. Wilson claims "pressure and duress" compelled his attendance in the Silva course as he felt a refusal might jeopardize his completion of law school and, thus, his entire legal career.

The amended complaint sets forth that during the three weeks following Wilson's participation in the mind control course, he suffered serious mental problems. On November 15, 1974 at 12:30 a.m. the appellant was admitted to a Milwaukee County institution allegedly due to deteriorating mental health. On the following day Wilson was released, withdrew from law school and returned to his home state of North Carolina. He then entered the Rockingham County Mental Health Center in North Carolina and received psychiatric treatment for almost a six month period, whether he was confined or being treated as an out-patient cannot be determined from the complaint. During this period Wilson received medications to suppress mental tension and to promote sleep.

The complaint sets forth that prior to attending the Silva mind control course Wilson had never experienced or been treated for any type of psychological disorder. The pleading states "that at no time prior to his attendance at such four day institute was any attempt made to evaluate plaintiff to determine the affect (sic) such course would have on him." Wilson's complaint also recites that he "was taught a method of mind control but was not taught how to control it."

Wilson re-entered the Law School in August, 1975. He alleges that during the school year the prior psychological problems recurred and his mental health again deteriorated, causing him to withdraw from the school on March 17, 1976. The complaint further states that the appellant continues to have serious mental health problems and was unable to attend law school during the 1976 or 1977 school year.

The complaint sets forth four separate and alternative claims in addition to the claim of negligence against the University. Claim Two alleges that the injury is one that would not ordinarily have occurred in the absence of carelessness and negligence and that at all times material the Law School failed to use due care while having the responsibility and exclusive control of the school's curriculum. Claim Three is directed against Silva's negligence in the conduct of the mind control course. The Fourth claim is identical to the Second except that it alleges Silva had exclusive control of the course's content. In each and every one of the first four claims Wilson alleges that his participation in the Silva course has resulted in permanent injury that will affect his future earning capacity in addition to alleging past and future pain and suffering and medical expenses in the sum of $3,000,000. In the Fifth claim Mrs. Wilson requests $5,000 in damages for loss of society, companionship and consortium.

The trial court's order and judgment of dismissal for failure to state a claim upon which relief can be granted failed to recite its reasoning with specificity. The order states that the decision relies on the argument and law presented at the motion hearing as well as a brief submitted on behalf of the University and insurance company. However, neither a transcript of the proceedings or the brief presented to the trial court are contained in the record on appeal.

The issue on appeal:

Do the allegations contained in the appellants' complaint meet the test of sufficiency in stating a claim upon which relief can be granted against the defendants, the University and Continental Insurance Companies?

The appellants contend that the trial court erred in dismissing the complaint. The claim of error states that Wisconsin's New Rules of Civil Procedure (chs. 801–807, Stats.) are in substantial conformity to the Federal Rules

of Civil Procedure and, therefore, Wisconsin adopts the concepts of notice pleading. The appellants maintain that the complaint satisfies the requirements of notice pleading to set forth in general terms the elements of a claim in negligence—duty, breach, cause and damage. *Thomas v. Kells,* 53 Wis.2d 141, 191 N.W.2d 872 (1971).

Sec. 802.06(2)(f), Stats., is modeled after 12(b)(6) of the Federal Rules of Civil Procedure, and the appellants argue that *Conley v. Gibson,* 35 U.S. 41, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957) recites the proper standard for testing the sufficiency of a complaint. *Conley* explains in the following language the test to be applied when challenging the sufficiency of a complaint:

"In appraising the sufficiency of the complaint we follow of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, supra* at 45–46.

This court takes the position that federal decisions construing the procedural counterparts to the Wisconsin Rules of Civil Procedure are persuasive, but are not controlling. We hold that sec. 802.06(2)(f), Stats., should be construed in recognition of the "notice pleading" concept but also in a manner so as to maintain a consistency with Wisconsin case law interpreting the demurrer, formerly used to challenge the sufficiency of a complaint. *See: Denny v. Mertz,* 84 Wis.2d 654, 267 N.W.2d 304 (1978) and *Village of McFarland v. Town of Dunn,* 82 Wis.2d 469, 263 N.W.2d 167 (1978).

In the recent case of *Anderson v. Continental Ins. Co.,* 85 Wis.2d 675, 271 N.W.2d 368 (1978), the court gave its approval to the following language explaining the similarities and differences between a demurrer and a sec. 802.06(2)(f) motion:

"The motion to dismiss for failure to state a claim upon which relief can be granted serves basically the same function as the demurrer for failure to state ultimate facts constituting a cause of action under former section 263.06 (6), that is, to test the legal sufficiency of the complaint. Unlike section 263.03 (2), however, the new rules do not require that the complaint state all the 'ultimate facts constituting each cause of action.' Thus, the motion to dismiss usually will be granted only when it is quite clear that under no conditions can the plaintiff recover." *Id.* at 603.[1]

The *Anderson* decision delineates that under the demurrer practice complaints were to be liberally construed but that under the 1976 Wisconsin Rules of Procedure "complaints are to be construed even more liberally." *Id.* at 684. Despite this language, the "quite clear" standard adopted in *Anderson* for testing the sufficiency of a complaint falls short of the all inclusive "beyond doubt" test established in *Conley v. Gibson, supra.*

■

Thus, we apply to this case the following standard: that a motion to dismiss under sec. 802.06 (2) (f), Stats., usually will be granted only when it is quite clear that under no conditions can the plaintiff recover. *Wulf v. Rebbun,* 25 Wis.2d 499, 131 N.W.2d 303 (1964) recites in the following language the standard applied to the former demurrer practice:

"While the complaint must be liberally construed it must still state a cause of action and must fairly inform the opposite party of what he is called upon to meet by alleging specific acts. A pleading may fairly inform an opposite party what he is called upon to meet and yet not state a cause of action. However, as stated in *Kagel v. Brugger* (1963), 19 Wis.2d 1, 119 N.W.2d 394, the question on this demurrer is whether the complaint which

---

[1] The adopted language appears in Clausen and Lowe, *The New Rules of Civil Procedure,* chs. 801–803, 59 Marq. L. Rev. 1, 54 (1976).

fairly informs the defendant of what he is charged states facts which give rise to a duty of the defendant owing to the plaintiff as a matter of law." *Id.* at 502–03.

The appellants contend that their complaint has set forth facts alleging the existence of a foreseeable harm and the existence of a legal duty which the University has allegedly breached. In *A. E. Investment v. Link Builders, Inc.,* 62 Wis.2d 479, 214 N.W.2d 764 (1974) the court explained the requirements for establishing duty in a claim of negligence. It was stated:

". . . The duty of any person is the obligation of due care to refrain from any act which will cause foreseeable harm to others even though the nature of that harm and the identity of the harmed person or harmed interest is unknown at the time of the act. . . .

"A defendant's duty is established when it can be said that it was foreseeable that his act or omission to act may cause harm to someone. A party is negligent when he commits an act when some harm to someone is foreseeable." *Id.* at 483–84.

*A. E. Investment v. Link Builders, Inc., supra,* is consistent with the well established precept that there is no legal duty and thus no liability for negligence unless there is foreseeable harm. *Osborne v. Montgomery,* 203 Wis. 223, 234 N.W. 372 (1931) ; *Bruss v. Milwaukee Sporting Goods,* 34 Wis.2d 688, 150 N.W.2d 337 (1967) ; *Grube v. Moths,* 56 Wis.2d 424, 202 N.W.2d 261 (1972). The Restatement (Second) of *Torts,* §291, p. 54 and Prosser, *Torts,* §31, p. 145 (4th ed.) emphasize that the harm must be foreseeable and additionally create an unreasonable risk of danger. Therefore, a claim in negligence must state general facts setting forth that the school had knowledge or should have had knowledge of a potential and unreasonable risk in permitting the offering of the Silva Mind Control International, Inc. program.

The allegation in paragraph 11 of the complaint that the school was aware of a foreseeable and unreasonable risk because of the guidance counseling's "adverse recommendation" is a bare conclusion not fulfilling a plaintiff's duty of stating the elements of a claim in general terms. Instead, the appellants attempt to imply that the counseling recommendation against the mind control course was because of an apparent danger. As was the case under the demurrer practice, pursuant to sec. 802.06(2)(f), Stats., "facts are not to be added in the process of giving the pleading a liberal construction." *Jennaro v. Jennaro*, 52 Wis.2d 405, 410, 190 N.W.2d 164 (1971). The "adverse recommendation" allegation asks the court to assume a danger was known or should have been known and thus the court must speculate and supply facts in order to find the complaint sufficient. An "adverse recommendation" from the college guidance center may emanate for a variety of reasons other than the existence of a known and unreasonable danger; the cost of the program ($190) may not be worth the educational benefit; the course may not achieve the educational ends sought to be accomplished; or the course may be duplicitous in teaching learning skills that a law school assumes an applicant possesses, regardless of weighted admission by virtue of a minority status.

One of the most critical deficiences in this pleading is the failure to state the instructional goals or teaching methods of the Silva mind control course allegedly causing the injury. Paragraph 15 reveals the only hint the plaintiff gives to the content of the course and the manner in which it is conducted. The following language states:

"15. That during said Institute, plaintiff, Larry Wilson, was taught a method of mind control but was not taught how to control it."

This allegation does not set forth facts to indicate that the Law School knew or should have known that Mr.

Wilson or other minority students would not be taught how to use and manage the mind control process in their daily endeavors. To find a negligence claim stated against the University we would have to speculate that the alleged course deficiency was the primary basis of the guidance center's "adverse recommendation."

The plaintiff also contends that at no time prior to or during the Silva course was a psychological evaluation made of the plaintiff or any other student to determine the potential effects of the course on an individual. This allegation assumes a legal duty on the part of the law school based upon its knowledge of a danger; but reiterating, nowhere in the complaint is the unreasonable risk set forth. Without facts stated in general terms reciting a foreseeable and unreasonable risk, the duty implied by the allegation is merely a legal conclusion. In passing upon the sufficiency of a complaint this court has often stated: ". . . conclusions of law as opposed to matters of fact are not deemed admitted. . . ," *Sipple v. Zimmerman,* 39 Wis.2d 481, 489, 159 N.W.2d 706 (1968) ; *Drake v. Milwaukee Mutual Insurance Company,* 70 Wis. 2d 977, 983, 236 N.W.2d 204 (1975).

Additionally, in *Bogust v. Iverson,* 10 Wis.2d 129, 102 N.W.2d 228 (1960), it was stated at p. 133:

" 'To hold that a teacher who has no training, education, or experience in medical fields is required to recognize in a student a condition the diagnosis of which is in a specialized and technical medical field, would require a duty beyond reason.' "

In *Bogust,* this court affirmed a trial court order granting a demurrer against a wrongful death action seeking to hold a guidance counselor negligent and responsible for a student's suicide. Factually, the student received direct guidance and supervision from the defendant as well as being given aptitude and personality tests. The defend-

ant, through his discussions with the student, knew of her emotional disturbances, social conflicts, scholastic difficulties and personal problems. *Bogust* supports this court's position that a school, because of its unique involvement in the development of a student's mind, should not be an insurer of its pupils' mental health.

In a case such as this where little more than conclusions have been set forth we are reticent to hold a school liable for offering a course and failing to perceive that the program may have a detrimental psychiatric and/or psychological impact on an individual student. If appellants' complaint is in itself accurate, Wilson, stating he had never experienced any type of mental disorder prior to the course, we cannot hold a teaching institution liable for failing to discover what he has had no knowledge of since birth. We know of no educational institution in the land requiring psychiatric and/or psychological evaluations for its students. In the appellants' attempt to set forth a duty on the part of the University to undertake psychiatric and psychological evaluations of its students, they ask this court to place an unreasonable burden upon the school systems. In order for our educational institutions to prosper and improve in keeping with the motto "Whatever may be the limitations which trammel inquiry elsewhere we . . . encourage that continual and fearless sifting and winnowing by which alone the truth can be found,"[2] we must not frustrate these fountains of knowledge by requiring the institution to serve a function beyond the realm of educational endeavor.

It is claimed by a certain few that school programs such as health education and contact sports can have harmful effects. However, the offering of these programs reflect two considerations. First, society demands schools

---

[2] Report of the Board of Regents, University of Wisconsin, 1894.

to perform an ever growing number of functions and services in order to prepare the future adult for the many complexities of human life. These additional educational offerings were once part of the family responsibility. Secondly, that liability for offering such programs is unusual as it is a basic tenet in the negligence doctrine that a risk is only determined unreasonable by balancing the probability and gravity of the harm against the utility of the act. Prosser, *supra* at 148; *Young v. Anaconda American Brass Co.*, 43 Wis.2d 36, 168 N.W.2d 112 (1969). In a complaint for negligence against a school for offering a certain course or extra curricular activity that bears social utility, unless an unreasonable risk of harm is generally stated and this risk is known to those in the field of education acting prudently, the following must control our consideration:

"The duty to use due care arises from probabilities, rather than from bare possibilities of injury. Failure to guard against the bare possibility of injury is not actionable negligence." *Grube v. Moths, supra* at 433.

The considerations discussed above amplify the court's discussion in *Alsteen v. Gehl,* 21 Wis.2d 349, 124 N.W.2d 321 (1963) regarding the practical and legal enigmas posed by a claim for mental injury:

"This court has recognized that the breach of a contractual duty may give rise to a cause of action predicated upon negligence. Granting that Mrs. Alsteen and Gehl had a contractual relationship, how are we to define Gehl's duty of reasonable care to Mrs. Alsteen? It is well established that harm must be reasonably foreseen as probable by a person of ordinary prudence under the circumstances, if conduct resulting in such harm is to constitute negligence. Are we to conclude that each person has a duty to use reasonable care to avoid creating unreasonable risks of emotional harm in relation to all persons with whom he may come into contact?" [citations omitted] *Id.* at 361–62.

Drawing upon the wisdom expressed in *Alsteen,* can this court or any court adequately define the parameters of the duty a school owes to its students to avoid creating unreasonable risks of emotional harm? It is certainly an impossible task to define this duty as of this date when the field of psychiatric evaluation, treatment and therapy leaves so many unanswered questions that leads us into the valley of doubt and speculation. In this state schooling is only mandatory upon children up to 16 years of age and yet many students elect to attend colleges and graduate schools. The rationale underlying this fact is that the family, combined with education, are the primary sources in an individual's proper development. Our schools are entrusted with this paramount duty to the individual and society because it is a safe and beneficial process, preparing one for the exigencies and trials of human endeavor. Except under the most unusual circumstances the educational system is not a harmful environment afflicted with known dangers.

While the complaint in this case is held deficient in failing to state a claim upon which relief can be granted, we add that even in a properly pleaded complaint involving litigants of a similar nature and a like claim for mental injury, the action may fare no better because of the underlying public policy considerations reflected in the educational field. Relying upon earlier cases,[3] *Rieck v. Medical Protective Co.,* 64 Wis.2d 514, 219 N.W.2d 242 (1974) lists this court's exclusive means for cutting off liability where breach of a legal duty has been proven as a substantial factor in causing injury:

"Even where the chain of causation is complete and direct, recovery may sometimes be denied on grounds of

[3] *See: Coffey v. City of Milwaukee,* 74 Wis.2d 526, 247 N.W.2d 131 (1976); *Howard v. Mt. Sinai Hospital, Inc.,* 63 Wis.2d 515, 217 N.W.2d 383 (1974), *aff'd* reh. 219 N.W.2d 576 (1974); *Hass v. Chicago North Western Ry. Co.,* 48 Wis.2d 321, 79 N.W.2d 885 (1970); *Colla v. Mandella,* 1 Wis.2d 594, 85 N.W.2d 345 (1957).

public policy because (1) the injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tortfeasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden (in this case before us, upon physicians and obstetricians); or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point." *Id.* at 517–18.

*Hass v. Chicago & North Western Ry. Co., supra* at 326 states that the application of the public policy considerations is solely a function of the courts. To this *Hass* adds that not in all cases will a full, factual resolution of the claim by trial be required before these public policy factors can be applied. *Id.* at 326–27. In *Rieck* it was specifically noted:

"Where the public policy question is fully presented by the complaint on demurrer, there is no necessity that a full trial precede the court's determination." *Rieck v. Medical Protective Co., supra* at 520.

Even at the pleading stage of a case involving similar litigants, circumstances and injuries, we might consider appropriate two of the above-mentioned policy considerations. First is that because of the demands society places upon schools this court will not promote a legal doctrine which would require educational systems to litigate every suit claiming negligence in the selection of curriculum, teaching methods, teachers or extra curricular activities. To rule otherwise would subject schools to constant harassment in the courts. We cannot foist such an unreasonable burden upon our schools without being fearful of the irreparable harm that might be done to public and private education. Second, in a claim for mental injuries without accompanying physical injury arising from tak-

ing an educational course in which no specific harm is alleged to have existed at the time of the course's selection, we deem the results so unexpected that we would not impose liability.

The position of this court in regard to the application of the public policy factors when dealing with a claim of mental distress was aptly explained by the following:

"Liability for damages caused by wrong ceases at a point dictated by public policy or common sense." *Howard v. Mt. Sinai Hospital, Inc.*, 63 Wis.2d 515, 522, 217 N.W.2d 383 (1974). (Justice ROBERT W. HANSEN, Concurring.) [4]

The court's common sense belief that it is unlikely that a minority student enrolled in a highly structured academic program such as the Marquette University Law School, whose course of study is the usual and accepted program of those institutions approved by the American Bar Association, will result in a student's emotional distress. This reasoning is consistent with the misgivings rendered by Mr. Justice ROBERT W. HANSEN, concurring in *Howard v. Mt. Sinai Hospital, Inc., supra,* wherein he expressed serious doubts regarding the existence of a reasonable basis for one developing a phobia that cancer or arthritis could result from "the slightest of fender-bender accidents." *Supra* at 523.

The appellants' second and alternative claim alleges the injury is one that would not ordinarily have occurred in the absence of carelessness and negligence and that the Law School failed to use due care while having the responsibility and exclusive control of the school's curriculum. This claim sounds in the nature of the *res ipsa loquitur* inference of negligence and is permitted where:

". . . (1) The event or accident in question be of the kind which does not ordinarily occur in the absence of

---

[4] Citing *Ferrara v. Galluchio*, 5 N.Y.2d 16, 22, 176 N.Y. Supp.2d 996, 152 N.E.2d 249 (1958).

someone's negligence; and (2) the agent or instrumentality causing the harm must have been within the exclusive control of the defendant." *Turtenwald v. Aetna Casualty & Surety Co.,* 55 Wis.2d 659, 665, 201 N.W.2d 1 (1972).

Mental disturbances can be caused by a myriad of reasons, particularly in a student experiencing the rigors of his freshman year in law school. Psychiatrists and psychologists, without in any way attributing these injuries to the school, have studied the mental stress and tension placed upon young professionals due to the great competitiveness for high grade scores. Under all the circumstances presented in this case, the claimed injury can and does occur where there has been no negligence. Thus, as a matter of law the appellants have failed to state facts which meet the first requirement to the *res ipsa loquitur* doctrine.

The respondents argue as a secondary basis for affirming the motion to dismiss that the appellants have not pleaded facts demonstrating a manifesting physical injury. We reaffirm on public policy grounds that a manifesting physical injury allegation is required in a claim for the negligent infliction of emotional distress. *Ver Hagen v. Gibbons,* 47 Wis.2d 220, 177 N.W.2d 283 (1970). However, the considerations set forth earlier in this opinion preclude the necessity of reaching the respondent's argument. Further, the issue could not be addressed because without a transcript and in the absence of the trial court's specific findings, we have no way of telling from this record whether that issue was properly preserved for appeal by argument at the hearing on the motion to dismiss.

Under the guise of notice pleading, the complaint before us requires the court to indulge in too much specu-

lation leaving too much to the imagination of the court. The appellants contend that such necessary facts will be supplied by the discovery process. We think not. We hold the appellants have not set forth facts constituting a claim in negligence against Marquette University ·and their insurer, Continental Insurance Companies, especially in light of the public policy questions raised by this appeal and the limited duty of schools to make psychological and/or psychiatric evaluations of their students when prior or· present conduct does not indicate the necessity for the same. After full and careful consideration, we believe that the ends of justice would not be served by granting the appellants leave to plead over. The appellants' request is therefore denied.

*By the Court.*—Judgment affirmed.

ABRAHAMSON, J., took no part.