WISCONSIN ASSOCIATION OF NURSING HOMES, INC., and others, Plaintiffs-Appellants, v. JOURNAL COMPANY, and another, Defendants-Respondents.

Court of Appeals

*No. 78–214. Oral argument September 12, 1979.—Decided October 5, 1979.*
(Also reported in 285 N.W.2d 891.)

710

For the plaintiffs-appellants, the cause was submitted on the briefs of *Stephen E. Gavin & Associates* and *Edwin C. Conrad,* with oral argument by *Frederick Miller,* all of Madison.

For the defendants-respondents, the cause was submitted on the brief of *Foley & Lardner* and *James P. Brody* and *Robert L. Binder,* with oral argument by *James P. Brody,* all of Milwaukee.

Before Decker, C. J., Moser, P. J., and Cannon, J.

CANNON, J. This is an appeal from an order and judgment denying plaintiffs-appellants' request for a mandatory injunction to compel defendants-respondents to publish an advertisement in defendants' newspaper.

Defendants are in the business of printing, publishing and distributing two newspapers in Wisconsin, *The Milwaukee Journal* and *The Milwaukee Sentinel*. Plaintiffs allege in their complaint that the defendants published a series of "investigative reports" in *The Milwaukee Journal* which dealt with the quality of care and services in several nursing homes. Plaintiffs further characterize the conclusions of the article as being "false and erroneous." As a result, plaintiffs prepared a full page advertisement which purported to respond to, and refute the allegations set out in the above-mentioned "reports." The defendant newspaper refused to publish the advertisement in the form presented, and referred the question of possibly libelous matter to the attention of plaintiffs' attorneys. The same advertisement was resubmitted to *The Milwaukee Journal,* and was again rejected. Plaintiffs then commenced an action seeking an order of the court directing and compelling publication.

Defendants moved to dismiss for failure to state a claim upon which relief could be granted, pursuant to sec. 802.06 (2) (f), Stats. On June 22, 1978, the court granted defendants' motion on the merits, and entered an order for judgment dismissing the complaint with costs to the defendant. Judgment was entered on July 14, 1978. Plaintiffs were denied an opportunity to plead over. Additional facts will be stated in the opinion as necessary.

The issue before us on appeal is whether a court can compel the publisher of a daily newspaper to accept and print an advertisement in the exact form submitted. The court below, granting the motion to dismiss, answered in

the negative. We must affirm. The respondents have a right to expect that the courts will respect and protect their constitutional right to exercise their prerogative in accepting or rejecting proposed advertising material.

The first amendment is clear in its admonition that "Congress shall make no law . . . abridging the freedom of speech, or of the press." This restraint on governmental interference with the press reflects one of the basic tenets on which our society was founded, the rejection of censorship. In *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964), the Court expressed this philosophy in terms of "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, . . . ."

The existence of a free press as a condition precedent to a free society has, therefore, been a primary concern of our courts. While there have been many arguments advanced by proponents of enforced access to the press, courts have steadfastly refused to permit any erosion of first amendment privileges. The Court, in *Associated Press v. United States*, 326 U.S. 1, 20 n. 18 (1945) emphasized this in its holding that it would not compel "AP or its members to permit publication of anything which their 'reason' tells them should not be published." *New York Times Co. v. United States*, 403 U.S. 713 (1971), clearly established the principle that any government action which acted as prior restraint on freedom of the press was presumptively unconstitutional. The Court in *Pittsburgh Press Co. v. Human Rel. Comm'n*, 413 U.S. 376, 391 (1973) stated:

"Nor, a fortiori, does our decision authorize any restriction whatever, whether of content or layout, on stories or commentary originated by Pittsburgh Press, its columnists, or its contributors. On the contrary, we reaffirm unequivocally the protection afforded to edi-

torial judgment and to the free expression of views on these and other issues, however controversial."

Most recently, the Court in *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241, 258 (1974) reaffirmed that:

A newspaper is more than a passive receptacle or conduit for news, comment, and advertising. The choice of material to go into a newspaper, and the decisions made as to limitations on the size and content of the paper, and treatment of public issues and public officials —whether fair or unfair—constitute the exercise of editorial control and judgment. It has yet to be demonstrated how governmental regulation of this crucial process can be exercised consistent with First Amendment guarantees of a free press as they have evolved to this time.

Thus, the clear weight of authority has not sanctioned any enforceable right of access to the press. In sum, a court can no more dictate what a privately owned newspaper can print than what it cannot print. *Carpets By the Carload, Inc. v. Warren*, 368 F. Supp. 1075, 1078 (E.D. Wis. 1973); *Associates & Aldrich Company v. Times Mirror Company*, 440 F.2d 133, 135 (9th Cir. 1971); *Chicago Joint Bd., Amal. Cloth. Wkrs. v. Chicago Tribune Co.*, 435 F.2d 470 (7th Cir. 1970); *Avins v. Rutgers, State University of New Jersey*, 385 F.2d 151 (3rd Cir. 1967), *cert. denied*, 390 U.S. 920 (1968); *Modla v. Tribune Publishing Co.*, 14 Ariz. App. 82, 480 P.2d 999 (Ct. App. Ariz. Div. 1, Dept. B 1971).

Absent contractual provisions, then, first amendment protections do not embody any obligation on the part of a privately owned newspaper to publish anything which conflicts with its internal policies or the reasoned judgment of its editors. Nor must such a newspaper accept any advertisement in the form presented. The degree

of judgmental discretion which a newspaper has with regard to refusing advertisements is not distinguishable, for purposes of first amendment analysis, from the degree of discretion it has as to the content of any other editorial materials submitted for publication.

*Carpets By the Carload, supra* at 1078, a decision of the United States District Court for the Eastern District of Wisconsin, specifically dealt with the question of judicial interference with editorial policy regarding advertisements:

Moreover, the court of appeals for this district has ruled that a newspaper is not required to accept and publish advertising, even if it is proper and paid for; the advertiser has no first amendment right to access to a newspaper. *Chicago Joint Board, Amalgamated Clothing Workers of America v. Chicago Tribune Co.,* 435 F.2d 470, 478 (7th Cir. 1970), cert. denied, 402 U.S. 973, 91 S. Ct. 1662, 29 L. Ed.2d 138 (1971).

Accordingly, to grant plaintiffs' request for a mandatory injunction compelling publication of an advertisement in this case would contravene the first and fourteenth amendments of the United States Constitution, and would run "squarely against the wall of freedom of the Press." *Person v. New York Post Corp.,* 427 F. Supp. 1297, 1301 (E.D.N.Y. 1977).

Plaintiffs argue, however, that defendants have a "monopoly" over all newspapers of general coverage in the Milwaukee metropolitan area, and that without access to defendants' newspapers, plaintiffs are deprived of any right to present their views to the public. Plaintiffs further contend that, as a result of this "monopoly," defendants have assumed the status of a public institution or quasi-public corporation or utility, and thus have a responsibility to their readers, advertisers, and subscribers to print both sides of a story. Finally, plaintiffs claim that defendants should be compelled to print the advertisement at issue on the ground that *New York*

*Times Co. v. Sullivan, supra* will protect the newspaper from liability even if the material engenders a libel action.

Presumably, the characterization of defendants as a quasi-public institution is to subject them to governmental regulation under the guise of state action inasmuch as fourteenth amendment prohibitions apply only to state actions, and do not affect private enterprise. *Burton v. Wilmington Pkg. Auth.*, 365 U.S. 715, 721 (1961).

In support of their contention, plaintiffs rely primarily on one case, *Uhlman v. Sherman*, 22 Ohio N.P. (n.s.) 225, 31 Ohio Dec. 54 (1919). In this case at 233-4, the court stated that:

We believe that the growth and extent of the newspaper business, the public favors and general patronage received by the publishers from the public, and the general dependence, interest and concern of the public in their home papers, has clothed this particular business with a public interest and rendered them amenable to reasonable regulations and demands of the public.

. . . .

We are of the opinion that it will be difficult to find any one line of business in the present age of the world which is of more vital interest and concern to the general public than the newspaper business. It is a moulder of public opinion, the general medium by which local and foreign news is conveyed to its patrons, the vehicle which carries to the people of the locality in which it is circulated, the most vital facts concerning its governmental matters.

It is the best advertising medium for local merchants. By general custom, the merchant speaks through it to his patrons, and the purchasing public uses it as a medium to select its places of purchase.

We therefore believe that a newspaper company when it has advertising space to sell has no right to discriminate against a local merchant who in his application for advertising complies with the law and the reasonable rules of said newspaper company in reference to the

character of his advertisement, and tenders the regular and ordinary fee charged therefor by said paper.

Plaintiffs' arguments must fail, however, for several reasons:

## I.

*Uhlman, supra* represents the minority rule, and stands alone in its holding that newspapers are amenable to governmental regulation.[1] We decline to accept it as controlling in this instance. We also note the qualifying language employed by the court in *Uhlman* which follows that quoted by plaintiffs:

> We do not intend to hold that a newspaper company may not reject some class or classes of advertising entirely, or that it may not use reasonable discretion in determining whether or not an advertisement presented is a proper one.

## II.

Several courts have had occasion to rule on the issue of newspapers as quasi-public institutions. Our conclusion that defendants' conduct cannot be considered

---

[1] It should be noted that a later unpublished Ohio case, *Sky High Theatre, Inc. v. Garemer Publishing Co.*, No. 22820 of the Common Pleas Court of Champaign County, which was reported in *Bloss v. Federated Publications, Inc.*, 5 Mich. App. 74, 83, 145 N.W.2d 800, 804 (1966) later refused to follow *Uhlman*:

" 'Under the circumstances, is this court bound by the decision in the *Uhlman* Case? The judgment of the circuit court of one district is not conclusive authority upon the judges of another district though the view obtains that the decisions by one court should be followed in other circuits unless it clearly appears to the courts in the latter circuits that the decision is wrong. . . . *It should be followed unless it clearly appears to this court that the decision is wrong—which is the case.*' " (Emphasis supplied) [Emphasis in original.]

state action is in accord with these decisions. *Associates & Aldrich Company, supra; Resident Participation of Denver, Inc. v. Love,* 322 F. Supp. 1100 (D. Colo. 1971) ; *Chicago Joint Bd., Amal. Cloth. Wkrs. v. Chicago Tribune Co., supra.* In *Chicago Tribune,* a union sought injunctive relief to compel newspapers to publish an editorial advertisement. The Seventh Circuit Court of Appeals affirmed the district court's determination that there was no state involvement in the conduct of the newspaper's business. The court of appeals quoted from the district court's memorandum opinion at 474:

"Rather than regarded as an extension of the state exercising delegated powers of a governmental nature, the press has long and consistently been recognized as an independant check on governmental power. . . . .
In sum, the function of the press from the days the Constitution was written to the present time has never been conceived as anything but a private enterprise, free and independent of government control and supervision. Rather than state power and participation pervading the operation of the press, the news media and the government have had a history of disassociation."

The issue of state control was raised by appellants in *Times Mirror, supra.* There the court at 136 noted:

Unlike broadcasting, the publication of a newspaper is not a government conferred privilege. As we have said, the press and the government have had a history of disassociation.
We can find nothing in the United States Constitution, any federal statute, or any controlling precedent that allows us to compel a private newspaper to publish advertisements without editorial control of their content merely because such advertisements are not legally obscene or unlawful.

Finally, Mr. Justice White, in his concurring opinion in *Tornillo, supra* at 259 stated that: "A newspaper or magazine is not a public utility subject to 'reasonable'

governmental regulation in matters affecting the exercise of journalistic judgment as to what shall be printed."

III.

Plaintiffs' argument that defendants' "monopolistic" control over newspapers in the Milwaukee area is a sufficient basis for the injunctive relief sought is similarly misplaced. While the United States Supreme Court has qualified the right of a publisher to refuse advertising in certain instances involving a claim of monopoly, such a rule is not applicable under the instant fact situation.

In *Lorain Journal Co. v. United States*, 342 U.S. 143 (1951), a newspaper withheld the right to advertise from a subscriber who also utilized a competitor's radio station for advertising. The Court found that the publisher's conduct amounted to an attempt to use first amendment protections to destroy competition and reestablish a monopoly. Under these circumstances, the Court held the refusal of advertising to be illegal monopolization of interstate commerce. In arriving at its decision, the Court balanced the congressional policy of preventing monopoly against the right of publishers to refuse advertising, and determined that the right of refusal had to yield to the potential for violations of the Sherman Act.

Plaintiffs' allegations of defendants' business practices as a monopoly are, therefore, not pertinent to this appeal. The complaint is devoid of any allegations which would establish the existence of any contracts, combinations or conspiracies in restraint of trade on the part of defendants. Section 133.01, Stats. Plaintiffs reaffirmed this in their brief: "Again, we do not allege an effective monopoly of the newspaper field in Milwaukee to establish an action for damages, based upon such monopoly, or combination in restraint of trade." Final-

ly, at oral argument, plaintiffs conceded that this was not a cause of action based on monopoly *per se.*

## IV.

Plaintiffs' argument that defendants have a duty and obligation to print both sides of an issue to their readers must also fail. They urge that the right of the newspaper to reject advertising must be balanced against the public's right to be aware of all the facts surrounding an issue. In *Chicago Tribune Co., supra,* at 478 the same arguments were raised by *amicus curiae* and rejected by the court:

It is urged that the privilege of First Amendment protection afforded a newspaper carries with it a reciprocal obligation to serve as a public forum, and if a newspaper accepts any editorial advertising it must publish all lawful editorial advertisements tendered to it for publication at its established rates. We do not understand this to be the concept of freedom of the press recognized in the First Amendment. The First Amendment guarantees of free expression, oral or printed, exist for all—they need not be purchased at the price *amici* would exact. The Union's right to free speech does not give it the right to make use of the defendants' printing presses and distribution systems without defendants' consent.

Plaintiffs cite *Fitzgerald v. National Rifle Ass'n of America,* 383 F. Supp. 162 (D.N.J. 1974) in support of their claim. While it is true that *Fitzgerald* balanced the fiduciary obligations of the National Rifle Association of America against a publisher's right to refuse advertising, the holding is inapplicable here. *Fitzgerald* dealt with an action by a member of a private organization to force publication of an advertisement regarding his candidacy for the association's board of directors. The publication involved was a private journal, and the court

found that it was closer in form to a corporate newsletter than to a traditionally commercial publication. The court held that to allow the newspaper to refuse to print the advertisement created the potential for violation of a corporate trust.

Plaintiffs here cannot rely on any fiduciary obligation or corporate trust in their request for a mandatory injunction. We again reaffirm that there is no duty on the part of a private newspaper to print what it otherwise "chooses to leave on the newsroom floor." *Tornillo, supra* at 261.

## V.

The journalistic discretion utilized by defendants in rejecting plaintiffs' advertisement because it contained possibly libelous material must also be sustained. Editorial policy should not be the subject of judicial interference notwithstanding plaintiffs' contention that defendants are protected by the rule set out in *New York Times Co. v. Sullivan, supra.* Plaintiffs argue that defendants would sustain no liability for publication of the allegedly libelous statement unless it is proved that the statement was made with actual malice. We reject this argument as the basis on which to compel publication of plaintiffs' advertisement. Such an argument begs the question and clouds the real issue. The question before us is not whether plaintiffs' advertisement is libelous, but whether they can compel its publication. It is well established that they cannot.

## VI.

A motion to dismiss under sec. 802.06 (2) (f), Stats., will be granted "only when it is quite clear that under no

conditions can the plaintiff recover." *Wilson v. Continental Insurance Cos.*, 87 Wis.2d 310, 317, 274 N.W.2d 679, 683 (1979). "A claim should not be dismissed under the Wisconsin rule . . . unless it appears to a certainty that no relief can be granted under any set of facts that plaintiff can prove in support of his allegations." *Morgan v. Pennsylvania General Ins. Co.*, 87 Wis.2d 723, 732, 275 N.W.2d 660, 664 (1979).

The trial court here did not abuse its discretion in granting defendants' motion to dismiss for failure to state a claim upon which relief could be granted. Under the above-mentioned state of the law, we agree that there was no likelihood of plaintiffs succeeding on the merits in their request for a mandatory injunction which would compel defendants to run the disputed advertisement in the form submitted.

Plaintiffs also raise the issue of repleading, and claim trial court error in the denial of an opportunity to plead over. We find no abuse of discretion, and affirm the dismissal on the merits.

In their brief, the plaintiffs urge that they should be permitted to replead a cause of action in conspiracy and restraint of trade in violation of the Federal Anti-Trust Laws, 15 U.S.C. §1–15 (1976) and the Newspaper Preservation Act, 15 U.S.C. §§1801–1804 (1976).

At oral argument, however, the plaintiffs conceded that the arguments made regarding monopoly were "misguided." Plaintiffs at the same time stated that they would not attempt to replead in monopoly or restraint of trade. Although members of the court repeatedly inquired about the nature of the claim for relief that plaintiffs proposed to replead, counsel was unable to propose a cause of action which was not within the area which we have defined as prohibited.[2]

---

[2] *Judge Cannon:* Is it your contention, counsel, that if you were afforded the opportunity of repleading, that you would consider a cause of action based upon monopoly or restraint of trade, and

There is no dispute that, as presented, the plaintiffs have failed to allege any facts which will serve as the basis of a claim sufficient to withstand a motion to dismiss. We are of the opinion that plaintiffs would be equally unsuccessful given the opportunity to plead over.

*By the Court.*—Order and judgment affirmed.

as you put it, the stranglehold by the two newspapers in disseminating the news throughout the community?

*Attorney Miller:* No, sir.

*Judge Cannon:* That you would not use that as a cause of action?

*Attorney Miller:* I would not.

*Judge Cannon:* And then what other cause of action would you have in mind?

*Attorney Miller:* In the same manner, your Honor, that your brother court created a defense that didn't exist in Wisconsin up until two and one-half weeks ago for a publisher similar to the New York Times. That defense existed nowhere in Wisconsin until two weeks ago. I am suggesting that this court discover that a cause of action in certain limited circumstances exists for my client and it will be that cause of action if you permit me to replead, that I will attempt to flesh out. The cause of action that arises when one is defamed, when the third party is defamed, and when you try to run a similar article the newspaper refuses to run it. That cause of action and only that cause of action would be repled.